## NAPOLITANO v STEINHAUSER et

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 29, 1935

T. E. Antonelli, Youngstown, for plaintiff.

J. E. Harrison, Youngstown, for defendants.

## OPINION

By CARTER, J.

Now, while the plaintiff claims fraud on the part of these defendants, it appears to this court that if the claim of the plaintiff is true, that she had no knowledge that she was signing the note and mortgage of $1050.00, then and in that event, of course, there could be no binding contract upon her part for the fundamental reasons that in all contractural relationships there must be a meeting of the minds in order to constitute a contract. Ohio Jurisprudence; Vol. 9, 251, p. 16, the authority uses this language, and this is supported by Ohio cases:

"The parties to a contract must have a distinct intention and that intention must be common to both and there must be communication by both parties to one another of their common intention. There can be no contract without a meeting of the minds, and a meeting of the minds is necessary both in an express contract and in a contract implied in fact, and there must be a meeting of minds as to every essential term of the contract, such as the consideration, parties and subject matter."

In the case of Mutual Life Insurance Company v Svonovac, 32 Oh Ap, 195-198, the court uses this language:

"A release, like every other contract entered into between parties, in order to be binding must be the result of a meeting of the minds between the parties."

And in the case at bar we must look to the record to conclude as to whether there was a meeting of the minds in connection with the mortgage and note of $1050.00. As to the mortgage and note of $4150.00, there is no question.

A number of witnesses were called on behalf of the plaintiff. The plaintiff herself was called to the witness stand, and she testified about her condition and further testified that her son discussed the matter with her and also her daughter, who was present at the time these papers were executed. These questions were propounded to her:

"Q. Did Mr. Steinhauser tell you what these papers were for?

A. Yes, they were for the property.

Q. He didn't tell you about any other mortgage?

A. No.

Q. Did you know that you were signing a mortgage and note for $1050.00 at that time?

A. No sir.

Q. Had you been informed, would you have signed the note and mortgage for $1050?

A. No."

Then this inquiry was made:

"Q. Are you able to read and write?

A. I used to be able to write, but now I can't because I shake so badly."

She also testified that she was unable to see but very little, and that she could not understand the English language, and that when Mr. Steinhauser was there the talk was with her daughter and the son. It is also testified in the record that upon her discovery that this mortgage of $1050 was against her property, that she nearly fainted upon the discovery of that fact, and became hysterical. The daughters testified that they were present at a number of the conversations had between the son, the defendant, F. J. Steinhauser, and the plaintiff, and that at no time did they hear discussed a second mortgage of $1050, but that all they talked about was the $4150.00 mortgage. The son, Carl, on page 97 of the record, testified to an inquiry made by the court as follows:

"COURT: Your mother at the time, these papers were signed conveying this property from the bank to her, did she know at that time that there was a second mortgage on it also, or was anything said about that?

A. No, we didn't say anything about it. We couldn't say anything about the second mortgage to her."

While F. J. Steinhauser testifies that the whole matter was thoroughly discussed between Carl, the son, and the mother, plaintiff in the case, and that she had full knowledge of the second mortgage of $1050.00 at the time she executed same.

A perusal of this entire record convinces this court that this old lady did not have knowledge at the time that she signed the $1050.00 note and mortgage that she was so doing, and that fact was concealed from her. That being true, under the holdings above, there could be no binding contract.

As to the second cause of action, we find in favor of the defendants, for the reason

that there is no question but that the plaintiff had full knowledge and intended to sign the mortgage for $4150.00. It is therefore the finding of this court that the note and mortgage of $1050.00 described in mortgage deed Record 352, p. 287, of the Records of Mortgages of Mahoning County be cancelled, set aside and held for naught and that unless the defendant Steinhauser cancel the same within five days after the journalizing of this finding, that the Clerk of Courts be and is hereby authorized to cancel the same, and that the title to the premises as to the lien of $1050.00 be quieted. Exceptions.

ROBERTS and NICHOLS, JJ, concur.